SWANN, Judge.
This is an appeal by the plaintiff below, Commercial Trading Company, Inc., to review a final summary judgment for the defendant, Coordinated Caribbean Transport, Inc., in a suit upon a contract of carriage evidenced by a bill of lading.
On April 22, 1963, a refrigerated trailer containing six hundred fifty-five cartons of boneless frozen beef was loaded on board a motor vessel operated and controlled by the appellee. A straight bill of lading was issued, indicating that' the meat was consigned to Trade Bank and’ Trust Co. of New York, and arrival notice was to be addressed to Progressive Meat Packers, Inc. of Philadelphia. Upon’ arrival’ of the vessel in Miami on April 29, 1963, notice was given to Howard Réeder, a customs house broker representing Progressive Meat Packers, Inc., who then directed that the meat be placed in a cold storage warehouse owned by Zero Food Storage, Inc. The meat was held in the name of appellee for the account of the meat packer.
On May 20, 1963 the bill of-lading was assigned to the appellant, who notified the appellee for the first time on September 5, 1963 of the assignment and demanded delivery. It was then ascertained that the cold storage warehouse had released the meat without surrender of the bill of lading, and plaintiff filed suit against the appellee and Zero Food Storage, Inc.
Subsequently, the trial court granted the appellee’s motion for a summary judgment, leaving undetermined the question of liability of the co-defendant, Zero Food Storage, Inc.
Under general maritime law, a port to port contract of carriage ordinarily requires the carrier to deliver goods, into the possession of the consignee, or at least to place the goods upon a fit wharf at the port of destination. Caterpillar Overseas, S.A. v. S.S. Expeditor, 2 Cir., 1963, 318 F.2d 720.
*892 A landmark case on the subject of delivery and carrier liability is Mordecai v. Lindsay, (The Eddy), 1867, 72 U.S. (5 Wall.) 481, 18 L.Ed. 486, wherein the Supreme Court discussed the extent of a carrier’s liability, stating:
* # * * * #
“Delivery on the wharf in the case of goods transported by ships is sufficient under our law, if due notice be given to the consignees and the different consignments to be properly separated, so as to be open to inspection and conveniently accessible to their respective owners. 2 Pars. Cont. Sth ed. 195; The Middlesex, 21 Law.Rep. 14. Where the contract is to carry by water from port to port an actual delivery of the goods into the possession of the owner or consignee, or at his warehouse, is not required in order to discharge the carrier from his liability, tie may deliver them on the wharf; but to constitute a valid delivery there the master should give due and reasonable notice to the consignee, so as to afford him a fair opportunity to remove the goods, or put them under proper care and custody. * * * ”
* * * * * *
We are in agreement with the action of the trial court, in that this appellee has complied with all the necessary terms and conditions of its contract of carriage. The contract of freight required that the appellee transport the cargo to Miami. Upon arrival, the agent of the notify party was properly notified and he prepared on behalf of the notify party all the documents required by the custom officials for entry of foreign goods into the United States. The agent then directed the appellee to place the cargo in the cold storage warehouse of Zero Food Storage, Inc.
The decision and judgment of the trial court is therefore
Affirmed.